# EXHIBIT C

# October 27, 2025 Letter from Shareholders to John Scott, Esq.

John MacMillan Scott esq

Tingo Group Inc

28 West Grand Avenue

Suite 3                                                                                    By Post and Email

Montvale NJ 07645                                                                27th October 2025

Dear Sir,

**Tingo Group Inc – Your Role as Chairman - Hadron Master Fund v Tingo Group Inc, case number 2:25-cv-8009 – Potential Offers for the Company**

The signatories to this letter are shareholders in Tingo Group Inc (the "Company") and are writing to you in your capacity as Chairman of the Company.  We write further to our letter of 16 October 2025 (attached at Appendix A), and in response to your letter of 24 October 2025.  We aim to re-assert the primacy of your fiduciary duties to your shareholder, highlight that your interests are conflicted and outline what you must do now.

**1) Your Fiduciary Duty**

We remind you that under both US and Delaware law your fiduciary duty is owed first and foremost to the shareholders of the Company.  Your duty to them is over and above that owed to other stakeholders in the Company, including creditors and any other third party.  Your duties of care to shareholders include (inter alia):

- an obligation to act in good faith to maximise shareholder value, which is particularly the case when a company faces potential sale or dissolution;
- you must adequately inform yourself before making decisions, including by conducting reasonable investigation in to alternatives;
- place shareholder interests above all other considerations including personal interests or obligations you may have to creditors, warrant holders or other third parties; and
- Ensure the Company obtains the best value reasonably available when a sale or dissolution becomes inevitable

When a company faces sale or dissolution Delaware law obliges you to obtain the best value reasonably available, which includes the following obligations on you:

- to actively solicit and consider alternative transactions;
- reasonable investigation into the credibility and terms of any proposals; and

- good faith engagement with interested parties who may present superior alternatives to liquidation.

Your summary dismissal of a potential acquisition in your letter and insistence on pursuing receivership demonstrates a total failure to meet these obligations.

**2) Conflict of Interest**

You fail to mention in your letter that you claim to be a creditor of the Company, and therein lies a conflict of interest that fatally compromises you from promoting the appointment of a receiver. As you point out in your letter, the interests of certain creditors will be paid out before holders of the Company's equity. Your position is therefore self-serving and in breach of the primacy of your duty to shareholders in the Company.

Failure to disclose a conflict of interest constitutes a breach of duty to shareholders and exposes you to personal liability for any resulting harm to shareholders. If any potential offer for the Company is frustrated by appointment of a receiver, you can be sure shareholders will pursue any such liability.

**3) Shareholder Representation**

You state in your letter that you have consulted with shareholders representing in excess of 40 per cent the Company's issued share capital. Based on our knowledge of the composition of the Company's shareholder base we doubt this is the case and are concerned as to the accuracy of your statement. We note you have failed to identify those shareholders and therefore ask you to do so.

You write that that those countersigned to the letter of 16 October 2025 merely represent 5 per cent of the Company. The signatories to our letter were gathered in a 48 hour period, clearly without the ability to reach all shareholders in the timeframe required, including those shareholders party to the above-named case. After the letter had been sent, numerous further shareholders got in touch to lend their support. Currently that support amounts to circa 20 per cent of the Company's issued share capital, a figure that rises as more shareholders become aware of this case and the position you have taken.

You write in your letter that the signatories had been "singled out" as a group to be "privy" to the possible existence of a tender offer for the shares of Company. This statement is entirely inaccurate. The potential existence of a tender for the Company has been in the public domain through court filings in the above-named case since July of this year. Any shareholder interested in the affairs of the Company and the fate of their investment will have been made aware of the potential tender offer directly or indirectly by way of the correspondence on the case docket.

### 4) Potential Tender Offer for the Company

The potential offeror has written to Hadron Master Fund on 14th October 2025, attached at Exhibit A of a letter from Messrs Porzio, Bromberg & Newman to the Honourable Judge Semper dated 15 October 2025.  The potential offeror has re-affirmed their commitment to buying 100 per cent of the issued share capital of the Company.  All the shareholders as co-signatories to this letter wish to see that offer progress to a point where they can see the terms. The shareholders want the opportunity to assess the potential offer and establish if it represents best value for the shareholders in the Company.  Under your fiduciary duties to the Company you must encourage the progress of the potential tender offer and an alterative means of realising shareholder value.

In their letter to Hadron Master Fund of 15 October 2025, the potential offeror has stated that their advisory team has counselled them to wait until the SEC is available to meet with them in order to pre-notify them ahead of filing the tender offer.  As you know, such meeting is unable to take place currently due to the on-going US Government shutdown.  It is absolutely clear to all shareholders undersigned that an opportunity for this meeting to take place must be allowed.

Your supposition that the potential tender offer for the Company is Dozy Mmobuosi or those connected to him is a reach of alarming proportions, and without a shred of evidence.  It is understood by those close to the matter that the potential buyer is a party both of significant financial substance and unimpeachable good standing.  Furthermore, that the  potential offeror has committed substantial resources and financial outlay in hiring a team of professional advisers to develop a full suite of tender documentation is not in doubt.

The potential offeror is entirely independent from Dozy Mmobuosi.   Your unevidenced attempt to smear the potential offeror by association appears to have sinister motives that arise from your conflicted interests.

### 5) Potential Receivership

You have supported the appointment of a receiver in your letter, yet you have failed to explain how this could benefit shareholders and the potential quantum.  In your capacity of Chairman you carried out significant due diligence in the Company pre-merger with MICT and put your name to numerous financial statements stating the assets of the Company, together with filed statements in 2023 that there had been no fraud.  It is therefore a surprise to read in your letter that the Company has "negative" assets.  Shareholders would be interested to understand what the assets of the Company now are, and how a receivership would realise any value from the assets for the shareholders.  The shareholders under-signed are interested in your view as to the

application of Sarbanes-Oxley to the performance of your duties during your tenor as a director of the Company.

Your assertion that the court should move expeditiously to appoint a receiver lacks rationale. There is no legitimate reason for urgency that would justify the frustration of a potential acquisition that could maximize shareholder value.  In  consideration of the appointment of a receiver, you should consider the following:

a) **Creditor positions are static**: The amounts owed to creditors—including Hadron Master Fund and any other petitioning parties—do not increase with time. No interest is accruing that would materially change their position and further erode the assets of the Company. Waiting 60-90 days to allow good-faith evaluation of acquisition proposals causes creditors no additional harm.

b) **Asset position cannot deteriorate further**: The Company has negative book value and no ongoing operations. There is no business to decline, no revenue to lose, and no competitive position to erode. The Company's value to its stakeholders cannot deteriorate further by waiting to allow the potential offer to progress.

c) **Receivership is irreversible**: Once a receiver is appointed and begins liquidating claims, the opportunity for shareholders to realize value through an acquisition is permanently destroyed. In contrast, deferring receivership by 60-90 days to evaluate a bona fide acquisition proposal is entirely reversible—if no credible offer materializes, the receivership can proceed without any party having suffered material prejudice.

The only parties that are pushing for an immediate receivership are those that benefit from dissolution rather than its acquisition. You are a creditor and would benefit in a receivership process.  Others that may benefit include creditors holding short positions or out-of-the-money warrants who would be financially advantaged by receivership (which eliminates their exposure) and financially disadvantaged by a successful acquisition (which could require them to cover short positions or see their warrants diluted).  Promoting the interests of such parties over the interests of shareholders puts you in breach of your fiduciary duties.

6) **To Conclude / What you must do now**

All shareholders undersigned wish to see the potential offer referred to in this letter afforded every chance to succeed outwith a receivership process.  At the very least the options of receivership and a tender offer for the Company should be allowed to co-exist until the prospect of an offer being forthcoming for the Company has been entirely exhausted – and that cannot be said to have occurred until the potential offeror has had

the opportunity to meet the SEC and seen their efforts to acquire the Company run their course.

Your position in supporting the immediate appointment of a receiver works directly against the interests of shareholders.  This serves primarily the interests of creditors to the Company, of whom we understand you may be one, and any other parties interested in or seeking to benefit from the winding up of the Company – including those who may still hold short positions in the Company's shares and/or those aligned to such persons.  Your correspondence with the Court in support of receivership can only serve to unsettle a potential offeror and jeopardise the possibility of a successful tender offer being forthcoming.  As such you are in breach of your duty to shareholders.

Again, we require you to fulfil your fiduciary duties to the shareholders of the Company and what you must do now is as follows:

- withdraw your position in support of the appointment of a receiver immediately;
- disclose whether you are a creditor of the Company and to what quantum;
- disclose any relationships, agreements or understandings you have with Hadron Master Fund, warrant holders or other parties who, whether directly or indirectly, may benefit from the winding up of the Company by way of receivership;
- disclosure your evaluation and analysis of how the immediate appointment of a receiver benefits shareholders and your best estimate of the quantum that may be available for distribution to shareholders;
- disclose all communications you have had with any party regarding the appointment of a receiver;
- disclose all communications you have had regarding potential acquisition proposals;
- disclose all investigations you have carried out into any potential acquisition; and
- attempt to engage properly and constructively with the Interested Shareholders and the potential offeror in order to properly evaluate the credibility of the potential offeror

Yours Faithfully,

Tingo Shareholders

Cc     Ken Denos

       David Trippier

**Appendix A**

John MacMillan Scott esq

Tingo Group Inc

28 West Grand Avenue

Suite 3                                                                                                  By Post and Email

Montvale NJ 07645                                                                          16th October 2025

Dear Sir,

**Tingo Group Inc – Your Role as Chairman - Hadron Master Fund v Tingo Group Inc, case number 2:25-cv-8009 – Potential Offers for the Company**

The signatories to this letter are shareholders in Tingo Group Inc (the "Company") and are writing to you in your capacity as Chairman of the Company.

We note correspondence in the case before the Honourable James K Semper of the United States Court for the District of New Jersey, Hadron Master Fund v Tingo Group Inc, case number 2:25-cv-8009.  In particular we refer to the following correspondence to Judge Semper:-

- a letter from counsel acting for interested shareholders Andrew Lazare, Raymond Ingleby and Simon Prior Palmer (the "Interested Shareholders"); and

- a letter to The Honourable Judge Semper from you in you capacity as Chairman of the Company, dated 4 September 2025;

In their letter, the Interested Shareholders refer to a potential offer for the shares Company and ask the judge not to appoint a Receiver in order to allow that offer to be forthcoming.  The Interested Shareholders attest that they represent in excess of 5 per cent of the issued share capital of the Company, are in direct contact with a potential offeror and that the offer could maximise shareholder value should it be forthcoming.  In your letter you dismiss the possibility of an offer.

In the circumstances the Company finds itself in we would not expect you to dismiss the prospect of any offer for the shares of the Company.  Any and all offers for the Company should be given every chance to materialise and be considered by the shareholders.  Any attempt by you or any other party to frustrate, jeopardise or thwart any offer, or potential offer, for the shares of the Company will be examined in the

context of your fiduciary duties to the Company and shareholders in the Company. We shareholders are writing to you to remind you and your fellow board members of your fiduciary duties to the Company's shareholders. This duty extends to being a custodian of shareholder value.

There may be third party individuals or third party entities that have an interest in the demise of the Company and the failure of any offer or potential offer for the Company's shares. The undersigned shareholders intend to investigate and identify any such bad actors, and their connections and motives, and hold them to account to the fullest extent possible.

<u>We expect you to write to Judge Semper forthwith and reverse the position set out in your letter of 4 September. We require that you advise the Judge that a Receiver should not be appointed in order to allow the prospect of an offer for the Company to materialise.</u>

The 51 shareholders that have signed this letter represent approximately x million shares in the Company.

Yours Faithfully,

| Jonnie Ray | *(signature)* |
| Neil Sampson | *(signature)* |
| Emma Isgren | *(signature)* |
| Peter Lilkenday | *(signature)* |
| Strachan Sampson | *(signature)* |
| Mark Coomes | *(signature)* Mark R Coomes M.D. |
| Jamil El-Houmayra | *(signature)* |
| Evert Hulleman | *(signature)* |
| Anthony Meehan | *(signature)* A Meehan |
| Paula Meehan | *(signature)* P Meehan |
| Jonathan Hobday | *(signature)* |
| Dustin Lahn | *(signature)* Dustin Lahn |

| Name | Signature |
|---|---|
| Keith Dearling | *(signature)* |
| Nigel Anderson | *(signature)* |
| Gary Sewell | *(signature)* |
| Richard Green | *(signature)* |
| Will Williams | *(signature)* |
| Jack Rumbol | *(signature)* |
| Thomas Harper | *(signature)* |
| Anthony Atkinson | *(signature)* |
| William Robertson | *(signature)* |
| Pauline Stout | *(signature)* |
| Malcolm Craig | *(signature)* |
| Taylor Dearling | *(signature)* |
| Allison Dearling | *(signature)* |
| James Tiltman | *(signature)* |
| Lee Sandford | *(signature)* |
| Chris Olerenshaw | *(signature)* |
| Andrew Hulme | *(signature)* |
| David Boshier | *(signature)* |
| Gregg Ashfield | *(signature)* |
| Rob Sanders | *(signature)* |
| Tim Pring | *(signature)* |
| Rory Millar | *(signature)* |

| | |
|---|---|
| James Campbell-Grey | *signature* |
| Will Evers | *signature* |
| Russell Sidebottom | *signature* |
| Andrew Sciama (on behalf of himself and Michael Sciama and Richard Sciama) | *signature* |
| Ian Gray | *signature* |
| Melanie Martell | *signature* |
| Jeremy Martell | *signature* |
| Lee Clarke | *signature* |
| Jessica Martell | *signature* |
| Mark Adams | *signature* |
| Keith Mead | *signature* |
| Sophie Raban | *signature* |
| Caroline Swallow | *signature* |
| Jeff Adams | *signature* |
| Rob Sanders | *signature* |
| Michael Baeten | *signature* |
| Paul Hopkirk | *signature* |
| Anthony Jimenez | *signature* |
| John Dickson | *signature* |

cc    Ken Denos, David Trippier

Case 2:25-cv-08009-JKS-JRA    Document 25-3    Filed 10/29/25    Page 11 of 11 PageID: 310