# EXHIBIT F

# October 29, 2025 Letter from Shareholders to Sir David Trippier

Via Email and Post
29 October 2025

Sir David Trippier
Independent Non-Executive Director
Tingo Group Inc.
28 West Grand Avenue, Suite 3
Montvale, NJ 07645

Dear Sir David,

**RE: Tingo Group Inc. – Your Role As Independent Non-Executive Director**

The co-signatories to this letter collectively hold in excess of 20 million shares representing more than 20% of Tingo Group Inc.'s outstanding equity.

As you know, the Company faces a receivership application in *Hadron Master Fund v. Tingo Group Inc.*, Case No. 2:25-cv-8009. Interested Shareholders representing over 5% of the Company have submitted correspondence to the court referencing a potential acquisition proposal and requesting deferral of any receivership to allow such proposal to materialise.

Mr Scott, writing to the court in his capacity as Chairman of the Company, has supported the immediate appointment of a receiver and summarily dismissed the potential offer out of hand. The co-signatories of this letter have been in correspondence with Mr Scott and the correspondence is included at Appendix A.

We recognise your distinguished career in public service, extensive financial markets experience, and decades-long reputation for integrity. We write to you separately from our correspondence with the Chairman to seek your oversight as an independent non-executive director.

Your role as an Independent Non-Executive Director is particularly important when the company confronts sale or dissolution – notably in a situation where creditors' interests may diverge from those of shareholders'. Your experience launching AIM in 1995 and serving as Minister for Small Firms and Enterprise suggests you understand both market integrity and the importance of evaluating all alternatives that might preserve shareholder value.

1) **Your Role as Independent Director**

As independent non-executive director we would be grateful for your perspective on the following:

**Board Process:**

- Has the Board acknowledged that its primary fiduciary duty under US and Delaware law is to act in the best interests of shareholders above any other party?

- Has the Board analysed the financial consequences of the appointment of a receiver and made a best estimate of the resultant outcome for shareholders?

- Has the Board discussed the potential offer referred to in the court correspondence by Interested Shareholders?

- Has the Board sought independent advice to compare receivership against a potential sale?

- Given clear conflicts of interest (directors who are both creditors and also shareholders, board members who may be acting in concert with other parties who may be significant creditors and/or interested in the dissolution of the Company), have you considered forming an independent special committee?

**Fiduciary Duties and Duty of Loyalty:**

- Has the Board sought Delaware counsel's advice on your Revlon duties when facing a sale or wind-down?

- Are you confident the Board has adequately identified and evaluated all reasonable alternatives to maximize shareholder value?

- Are the directors considering their actions in light of the Duty of Loyalty owed to the Company and shareholders over personal interests under Delaware Law?

**Economics:**

- Has the Company analysed expected shareholder recovery under receivership?

- Has the Board considered and assessed the option of allowing the potential offeror time to meet with the SEC to issue their Tender Offer formally, accommodated by the formal deferral of the appointment of a receiver?

- Are you confident that the Board has adequately identified and evaluated all reasonable alternatives to maximise shareholder value?

2) **Your Interests**

We respectfully request disclosure of:

- Your current shareholding, options, warrants, or derivative instruments in the Company;

- Please disclose any unpaid director fees or other debts owed to you by the Company;

- Any relationships with Hadron Master Fund, other petitioning creditors or related parties

- The identity of the shareholders "representing approximately 40% of equity" that the Chairman claims to have consulted when forming his support for the appointment of a receiver; and

- Whether you were consulted before the Chairman wrote to Judge Semper dismissing the acquisition possibility, and whether you agree with that position

**3) Further Considerations**

In your capacity as independent non-executive director we ask you to consider:

1. Whether you would support (a) establishment of a special committee or retention of independent advisors; and (b) a supplemental letter to Judge Semper requesting time for the potential offeror to meet with the SEC and file their proposed Tender Offer?

2. Has he Board's process to date has been adequate to fulfil their fiduciary duties to shareholders and maximise shareholder value?

3. Whether the Mr Scott's position as Chairman of the Company remains tenable given the conflicts of interest and breaches of fiduciary duty outlined in the attached correspondence.

Yours Faithfully

Tingo Shareholders

cc:
John MacMillan Scott, Chairman
Kenneth Denos, Director

**APPENDIX A**

John MacMillan Scott esq

Tingo Group Inc

28 West Grand Avenue

Suite 3                                                                                          By Post and Email

Montvale NJ 07645                                                                  16th October 2025

Dear Sir,

**Tingo Group Inc – Your Role as Chairman - Hadron Master Fund v Tingo Group Inc, case number 2:25-cv-8009 – Potential Offers for the Company**

The signatories to this letter are shareholders in Tingo Group Inc (the "Company") and are writing to you in your capacity as Chairman of the Company.

We note correspondence in the case before the Honourable James K Semper of the United States Court for the District of New Jersey, Hadron Master Fund v Tingo Group Inc, case number 2:25-cv-8009. In particular we refer to the following correspondence to Judge Semper:-

- a letter from counsel acting for interested shareholders Andrew Lazare, Raymond Ingleby and Simon Prior Palmer (the "Interested Shareholders"); and

- a letter to The Honourable Judge Semper from you in you capacity as Chairman of the Company, dated 4 September 2025;

In their letter, the Interested Shareholders refer to a potential offer for the shares Company and ask the judge not to appoint a Receiver in order to allow that offer to be forthcoming. The Interested Shareholders attest that they represent in excess of 5 per cent of the issued share capital of the Company, are in direct contact with a potential offeror and that the offer could maximise shareholder value should it be forthcoming. In your letter you dismiss the possibility of an offer.

In the circumstances the Company finds itself in we would not expect you to dismiss the prospect of any offer for the shares of the Company. Any and all offers for the Company should be given every chance to materialise and be considered by the shareholders. Any attempt by you or any other party to frustrate, jeopardise or thwart any offer, or potential offer, for the shares of the Company will be examined in the context of your fiduciary duties to the Company and shareholders in the Company. We shareholders are writing to you to remind you and your fellow board members of your

fiduciary duties to the Company's shareholders. This duty extends to being a custodian of shareholder value.

There may be third party individuals or third party entities that have an interest in the demise of the Company and the failure of any offer or potential offer for the Company's shares. The undersigned shareholders intend to investigate and identify any such bad actors, and their connections and motives, and hold them to account to the fullest extent possible.

<u>We expect you to write to Judge Semper forthwith and reverse the position set out in your letter of 4 September. We require that you advise the Judge that a Receiver should not be appointed in order to allow the prospect of an offer for the Company to materialise.</u>

The 51 shareholders that have signed this letter represent approximately x million shares in the Company.

Yours Faithfully,

| Jonnie Ray | |
| Neil Sampson | |
| Emma Isgren | |
| Peter Lilkenday | |
| Strachan Sampson | |
| Mark Coomes | |
| Jamil El-Houmayra | |
| Evert Hulleman | |
| Anthony Meehan | |
| Paula Meehan | |
| Jonathan Hobday | |
| Dustin Lahn | |
| Keith Dearling | |

| Name | Signature |
|---|---|
| Nigel Anderson | |
| Gary Sewell | |
| Richard Green | |
| Will Williams | |
| Jack Rumbol | |
| Thomas Harper | |
| Anthony Atkinson | |
| William Robertson | |
| Pauline Stout | |
| Malcolm Craig | |
| Taylor Dearling | |
| Allison Dearling | |
| James Tiltman | |
| Lee Sandford | |
| Chris Olerenshaw | |
| Andrew Hulme | |
| David Boshier | |
| Gregg Ashfield | |
| Rob Sanders | |
| Tim Pring | |
| Rory Millar | |
| James Campbell-Grey | |

| | |
|---|---|
| Will Evers | |
| Russell Sidebottom | |
| Andrew Sciama (on behalf of himself and Michael Sciama and Richard Sciama) | |
| Ian Gray | |
| Melanie Martell | |
| Jeremy Martell | |
| Lee Clarke | |
| Jessica Martell | |
| Mark Adams | |
| Keith Mead | |
| Sophie Raban | |
| Caroline Swallow | |
| Jeff Adams | |
| Rob Sanders | |
| Michael Baeten | |
| Paul Hopkirk | |
| Anthony Jimenez | |
| John Dickson | |

cc     Ken Denos, David Trippier

John MacMillan Scott esq

Tingo Group Inc

28 West Grand Avenue

Suite 3                                                                                                    By Post and Email

Montvale NJ 07645                                                                        27th October 2025

Dear Sir,

**Tingo Group Inc – Your Role as Chairman - Hadron Master Fund v Tingo Group Inc, case number 2:25-cv-8009 – Potential Offers for the Company**

The signatories to this letter are shareholders in Tingo Group Inc (the "Company") and are writing to you in your capacity as Chairman of the Company.  We write further to our letter of 16 October 2025 (attached at Appendix A), and in response to your letter of 24 October 2025.  We aim to re-assert the primacy of your fiduciary duties to your shareholder, highlight that your interests are conflicted and outline what you must do now.

   **1)  Your Fiduciary Duty**

We remind you that under both US and Delaware law your fiduciary duty is owed first and foremost to the shareholders of the Company.  Your duty to them is over and above that owed to other stakeholders in the Company, including creditors and any other third party.  Your duties of care to shareholders include (inter alia):

- an obligation to act in good faith to maximise shareholder value, which is particularly the case when a company faces potential sale or dissolution;
- you must adequately inform yourself before making decisions, including by conducting reasonable investigation in to alternatives;
- place shareholder interests above all other considerations including personal interests or obligations you may have to creditors, warrant holders or other third parties; and
- Ensure the Company obtains the best value reasonably available when a sale or dissolution becomes inevitable

When a company faces sale or dissolution Delaware law obliges you to obtain the best value reasonably available, which includes the following obligations on you:

- to actively solicit and consider alternative transactions;
- reasonable investigation into the credibility and terms of any proposals; and

- good faith engagement with interested parties who may present superior alternatives to liquidation.

Your summary dismissal of a potential acquisition in your letter and insistence on pursuing receivership demonstrates a total failure to meet these obligations.

### 2) Conflict of Interest

You fail to mention in your letter that you claim to be a creditor of the Company, and therein lies a conflict of interest that fatally compromises you from promoting the appointment of a receiver. As you point out in your letter, the interests of certain creditors will be paid out before holders of the Company's equity. Your position is therefore self-serving and in breach of the primacy of your duty to shareholders in the Company.

Failure to disclose a conflict of interest constitutes a breach of duty to shareholders and exposes you to personal liability for any resulting harm to shareholders. If any potential offer for the Company is frustrated by appointment of a receiver, you can be sure shareholders will pursue any such liability.

### 3) Shareholder Representation

You state in your letter that you have consulted with shareholders representing in excess of 40 per cent the Company's issued share capital. Based on our knowledge of the composition of the Company's shareholder base we are doubtful this is the case and concerned as to the accuracy of your statement. We note you have failed to identify those shareholders and therefore ask you to do so.

You write that that those countersigned to the letter of 16 October 2025 merely represent 5 per cent of the Company. The signatories to our letter were gathered in a 48 hour period, clearly without the ability to reach all shareholders in the timeframe required, including those shareholders party to the above-named case. After the letter had been sent, numerous further shareholders got in touch to lend their support. Currently that support amounts to circa 20 per cent of the Company's issued share capital, a figure that rises as more shareholders become aware of this case and the position you have taken.

### 4) Potential Tender Offer for the Company

The potential offeror has written to Hadron Master Fund on 14th October 2025, attached at Exhibit A of a letter from Messrs Porzio, Bromberg & Newman to the Honourable Judge Semper dated 15 October 2025. The potential offeror has re-affirmed their commitment to buying 100 per cent of the issued share capital of the Company. All the shareholders as co-signatories to this letter wish to see that offer progress to a point where they can see the terms. The shareholders want the opportunity to assess the potential offer and establish if it represents best value for the shareholders in the

Company. Under your fiduciary duties to the Company you must encourage the progress of the potential tender offer and an alterative means of realising shareholder value.

In their letter to Hadron Master Fund of 15 October 2025, the potential offeror has stated that their advisory team has counselled them to wait until the SEC is available to meet with them in order to pre-notify them ahead of filing the tender offer. As you know, such meeting is unable to take place currently due to the on-going US Government shutdown. It is absolutely clear to all shareholders undersigned that an opportunity for this meeting to take place must be allowed.

You write in your letter that the signatories had been "singled out" as a group to be "privy" to the possible existence of a tender offer for the shares of Company. This statement is entirely inaccurate. The potential existence of a tender for the Company has been in the public domain through court filings in the above-named case since July of this year. Any shareholder interested in the affairs of the Company and the fate of their investment will have been made aware of the potential tender offer directly or indirectly by way of the correspondence on the case docket.

Your supposition that the potential tender offer for the Company is Dozy Mmobuosi or those connected to him is a reach of alarming proportions, and without a shred of evidence. It is understood by those close to the matter that the potential buyer is a party both of significant financial substance and unimpeachable good standing. Furthermore, that the potential offeror has committed substantial resources and financial outlay in hiring a team of professional advisers to develop a full suite of tender documentation is not in doubt.

The potential offeror is entirely independent from Dozy Mmobuosi. Your unevidenced attempt to smear the potential offeror by association appears to have sinister motives that seem to arise from your conflicted interests.

    5) **Potential Receivership**

You have supported the appointment of a receiver in your letter, yet you have failed to explain how this could benefit shareholders and the potential quantum. In your capacity of Chairman you carried out significant due diligence in the Company pre-merger with MICT and put your name to numerous financial statements stating the assets of the Company, together with filed statements in 2023 that there had been no fraud. It is therefore a surprise to read in your letter that the Company has "negative" assets. Shareholders would be interested to understand what the assets of the Company now are, and how a receivership would realise any value from the assets for the shareholders. Finally, the shareholders under-signed are interested in your view as to the application of Sarbanes-Oxley to the performance of your duties during your tenor as a director of the Company.

**6) To Conclude / What you must do now**

All shareholders undersigned wish to see the potential offer referred to in this letter afforded every chance to succeed outwith a receivership process.  At the very least the options of receivership and a tender offer for the Company should be allowed to co-exist until the prospect of an offer being forthcoming for the Company has been entirely exhausted – and that cannot be said to have occurred until the potential offeror has had the opportunity to meet the SEC and seen their efforts to acquire the Company run their course.

Your position in supporting the appointment of a receiver works directly against the interests of shareholders.  This serves primarily the interests of creditors to the Company, of whom we understand you may be one, and any other parties interested in or seeking to benefit from the winding up of the Company – including those who may still hold short positions in the Company's shares and/or those aligned to such persons.  Your correspondence with the Court in support of receivership can only serve to unsettle a potential offeror and jeopardise the possibility of a successful tender offer being forthcoming.  As such you are in breach of your duty to shareholders.

Again, we require you to fulfil your fiduciary duties to the shareholders of the Company and what you must do now is as follows:

- withdraw your position in support of the appointment of a receiver immediately;
- disclose whether you are a creditor of the Company and to what quantum;
- disclose any relationships, agreements or understandings you have with Hadron Master Fund, warrant holders or other parties who, whether directly or indirectly, may benefit from the winding up of the Company by way of receivership;
- disclosure your evaluation and analysis of how the appointment of a receiver benefits shareholders and your best estimate of the quantum that may be available for distribution to shareholders;
- disclose all communications you have had with any party regarding the appointment of a receiver;
- disclose all communications you have had regarding potential acquisition proposals;
- disclose all investigations you have carried out into any potential acquisition; and
- attempt to engage properly and constructively with the Interested Shareholder

Yours Faithfully,


Tingo Shareholders

Cc      Ken Denos, David Trippier

John MacMillan Scott esq

Tingo Group Inc

28 West Grand Avenue

Suite 3                                         By Post and Email

Montvale NJ 07645                          27th October 2025

Dear Sir,

**Tingo Group Inc – Your Role as Chairman - Hadron Master Fund v Tingo Group Inc, case number 2:25-cv-8009 – Potential Offers for the Company**

The signatories to this letter are shareholders in Tingo Group Inc (the "Company") and are writing to you in your capacity as Chairman of the Company. We write further to our letters of 16 October 2025 (attached at Appendix A) and our letter of 27th October 2025 (attached at Appendix B). We address below your letter of 27 October 2025.

     **1) Conflict of Interest**

We note that you have confirmed that you do claim to be a creditor of the Company, which in itself gives rise to a conflict of interest when recommending the appointment of a receiver. You have not disclosed the amount you claim.

Further to the above there is significant concern, due (inter alia) the position you have taken in the above-named case, that you are working and communicating with parties interested solely in the dissolution of the Company. Such parties may include the plaintiffs and/or other entities who may hold open short positions or out of the money warrants. There is also concern that you may be working and communicating with a creditor who may be acting as a shadow director through you. We note that you have not chosen to disclose the 40 percent of the issued share capital with whom you consulted prior to your previous correspondence – please provide this information forthwith.

     **2) Knowledge of Bid**

You write that you can't understand why *"you alone [have] been singled out to be privy to this "bid" while I and the board along with other shareholders have not"*

The shareholders in this group represent circa 20 per cent of the Company's share capital and number in excess of 60 people. That is not a small number of people. The

correspondence in this case has been the subject of public filings on the docket for any interested shareholder to see and track since July. The credibility of the offeror is reinforced by our understanding that one of the "Interested Shareholders" has independent acquaintance with the offeror through his business in the energy sector. Moreover, in a tender offer process, particularly in the case of a distressed company, it is common and permitted for a potential buyer to communicate and engage with substantial shareholders.

Given your conflict of interest as outlined above and hostility to the potential offer and potential offeror – along with your apparent determination to ignore your fiduciary duties – it is not surprising that the potential offeror and their advisors have chosen not to engage with you or supply you with information pertaining to the bid. It would be a reasonable conclusion to expect that you would be made aware of any tender offer from the potential offeror when filed and communicated with all shareholders.

3) **SEC Oversight**

It is astonishing that you question why the SEC would be involved in a tender offer process for the Company, and why any offeror would have to comply with SEC regulations. A reasonably competent of director of a public company should not be unaware of the requirements for any bidder for Tingo Group Inc, a publicly traded company, to comply with SEC rules on a tender offer. You display breath-taking ignorance of the prevailing United States law and regulations for one in your position, and for one minded to interfere in the above-named case.

The need for the potential buyer to engage with the SEC ahead of the tender offer has been exacerbated by your attempts to smear the tender offer process by way of association with Dozy Mmobuosi. Your accusations and insinuations have made it imperative for the potential offeror to ensure that your entirely unfounded accusations and insinuations do not influence the SEC's view of the offeror, their provenance or the quality of their bid in any way whatsoever. The cause of delay whilst the potential offeror seeks a meeting with the SEC is in no small part due to the damage done by your correspondence on the docket of this case..

4) **Potential Bid**

Your correspondence in this case on the docket is understood to have damaged the tender offer process given it is understood to have unsettled the buyer and contributed directly to the delay whilst they seek a meeting with the SEC. Your correspondence seeks to frustrate any bid for the Company and You are directly jeopardising the success of the potential bid for the issued share capital for the Company succeeding. However, we note that you would be "delighted" to receive a tender offer for your 410,000 shares in the Company. In which case, you should be aligned with the shareholders who are co-signatories to this letter. Your apparent hostility to the potential offer and prejudices

displayed towards the potential offeror gives rise to legitimate questions as to your motives and interests. If you would like to see a bid come forward for your shares, every letter you have written effectively shoots yourself in the foot – and sets you against the interests of shareholders.

**5) Your Fiduciary Duty and what you must do**

We remind you that under both US and Delaware law your fiduciary duty is owed first and foremost to the shareholders of the Company. Your duty to them is over and above that owed to other stakeholders in the Company, including creditors and any other third party. Moreover, your own position as creditor is entirely subordinate to your fiduciary duty to shareholders. We refer you to our previous letter of 27th October on this subject. To the extent you continue to fail in your performance of your fiduciary duties and damage shareholders interest, this group is resolved to hold you to account at law.

We take this opportunity to re-state what we require you to do in pursuance of your fiduciary duties to shareholders:

- withdraw your position in support of the appointment of a receiver immediately;
- disclose whether you are a creditor of the Company and to what quantum;
- disclose the holders of the 40 percent of the issued capital of the Company that you state you are in communication with;
- disclose any relationships, agreements or understandings you have with Hadron Master Fund, warrant holders or other parties who, whether directly or indirectly, may benefit from the winding up of the Company by way of receivership;
- disclosure your evaluation and analysis of how the immediate appointment of a receiver benefits shareholders and your best estimate of the quantum that may be available for distribution to shareholders;
- disclose all communications you have had with any party regarding the appointment of a receiver;
- disclose all communications you have had regarding potential acquisition proposals;
- disclose all investigations you have carried out into any potential acquisition; and
- attempt to engage properly and constructively with the Interested Shareholders

Yours Faithfully,


Tingo Shareholders

Cc    Ken Denos

       David Trippier