Thomas B. Slocum, Esq.
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Blvd., 8th Floor
Bridgewater, New Jersey 08807
Tel.: (908) 722-0700
tslocum@norris-law.com
*Attorneys for Plaintiffs Hadron Master Fund,*
*Hadron Master Fund Series II, Michael Leslie*
*Cohen, and Gabriel David*

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| HADRON MASTER FUND, HADRON MASTER FUND SERIES II, MICHAEL LESLIE COHEN, and GABRIEL DAVID,<br><br>    Plaintiffs,<br><br>v.<br><br>TINGO GROUP, INC.,<br><br>    Defendant. | Case No: 2:25-cv-8009<br><br>**CONSENT ORDER APPOINTING RECEIVER** |

**THIS MATTER,** having been opened to the Court jointly by Norris McLaughlin, P.A., on behalf of the Hadron Master Fund, Hadron Master Fund Series II, Michael Leslie Cohen, and Gabriel David ("Plaintiffs"), and S. Mitnick Law P.C., on behalf of Defendant Tingo Group Inc. ("Tingo"), seeking an Order appointing a receiver of Tingo pursuant to Local Civil Rule 66.1 by way of Consent Order; and the Court being satisfied that the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of Tingo that: (a) are attributable to funds derived from investors of Tingo; (b) are held in constructive trust for Tingo; (c) were fraudulently transferred by Tingo, its affiliates and/or subsidiaries, its directors, officers, and/or principals; and/or (d) may otherwise be includable as assets of the estate

of Tingo (collectively, the "Recoverable Assets"); and Plaintiffs and Tingo having consented to the entry of this Consent Order; and good cause having been shown:

IT IS on this 31st day of March, 2026, **ORDERED** that:

1.     The parties' joint request for appointment of a Receiver is GRANTED.

2.     This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Defendant Tingo;

3.     Until further Order of this Court, David Stapleton of J.S. Held LLC, is hereby appointed to serve without bond as receiver (the "Receiver") for the Defendant Tingo.

## I.     General Powers and Duties of Receiver

4.     The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers, and general and limited partners of Defendant Tingo under applicable state and federal law, by the governing charters, by-laws, articles, and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959, and 1692, Federal Rule of Civil Procedure 66, and Local Civil Rule 66.1.

5.     The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys, and other agents of Defendant Tingo are hereby dismissed and the powers of any general partners, directors, and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to Defendant Tingo's operations or assets, except to the extent as may hereafter be expressly granted by the Receiver and to the extent necessary to represent the interests of Tingo in the receivership action. The Receiver shall assume and control the operation of Defendant Tingo and shall pursue and preserve all of its claims.

6.     No person, other than the Receiver, holding or claiming any position of any sort with Defendant Tingo shall possess any authority to act by or on behalf of Defendant Tingo.

7.      Subject to the specific provisions in Sections II through XIII below, the Receiver shall have the following general powers and duties:

    A.    To use reasonable efforts to determine the nature, location, and value of all property interests of Defendant Tingo and all other Recoverable Assets, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which Defendant Tingo owns, possesses, has a beneficial interest in, or controls directly or indirectly, including assets fraudulently transferred by Defendant Tingo ("Receivership Property" or, collectively, the "Receivership Estate");

    B.    To take custody, control, and possession of all Receivership Property and records relevant thereto from Defendant Tingo; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto;

    C.    To manage, control, operate, and maintain the Receivership Estate and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court;

    D.    To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

    E.    To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of Defendant Tingo;

    F.    To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, title companies, property managers, construction managers, contractors or sub-contractors related to construction requirements, architects, engineers, environmental consultants, forensic experts, brokers, traders, or auctioneers;

    G.    To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

- 3 -

H.   To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure, concerning any subject matter within the powers and duties granted by this Order;

I.   To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.   To pursue, resist, and defend all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Estate;

K.   To borrow funds needed for undertaking any role, function, or responsibility as Receiver, including but not limited to through the issuance of receiver's certificates, on such terms as the Receiver deems reasonable and proper in his discretion; and

L.   To take such other action as may be approved by this Court.

## II.   Access to Information

8.   Defendant Tingo and the officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of Defendant Tingo, as well as those acting in their place, are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

## III.   Access to Books, Records, and Accounts

9.   The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to Defendant Tingo. All persons and entities having control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver. The Receiver shall have control of, and to be added as the sole authorized signatory for, all existing accounts of Defendant Tingo, including all accounts at any bank, title company, escrow agent, financial institution or brokerage firm (including any futures commission merchant) which has possession, custody or control of any assets or funds of Defendant Tingo, and its subsidiaries and affiliates, or

- 4 -

which maintains accounts over which Defendant Tingo and its subsidiaries and affiliates, and/or any of its employees or agents have signatory authority.

10. Defendant Tingo, as well as its agents, servants, employees, attorneys, any persons acting for or on behalf of Defendant Tingo, and any persons receiving notice of this Order by personal service, email, facsimile, or otherwise, having possession of the property, business, books, records, accounts, or assets of Defendant Tingo, or other Receivership Property, are hereby directed to deliver the same to the Receiver, his agents and/or employees, to the extent such documents are within such persons' possession, custody or control.

11. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any Receivership Property that receive actual notice of this Order by personal service, email, facsimile, or otherwise shall:

A. Not liquidate, transfer, sell, convey, or otherwise transfer any Receivership Property except upon instructions from the Receiver;

B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C. Within five (5) business days of receipt of notice of this Order, serve upon the Receiver a certified statement setting forth, with respect to any account or other asset that is Receivership Property, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and

D. Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

### IV. Access to Real and Personal Property

12. The Receiver is authorized to take immediate possession of all personal property of Defendant Tingo, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media, or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and

accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

13.     The Receiver is authorized to take immediate possession of all real property of Defendant Tingo, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, email, facsimile, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or (c) destroying, concealing, or erasing anything on such premises.

14.     The Receiver is authorized to conduct such investigation and discovery as may be necessary to locate and account for all of the assets of or managed by Defendants and its subsidiaries and affiliates, and to engage and employ attorneys, accountants and other persons to assist in such investigation and discovery. To the extent that additional real property assets are discovered by the Receiver, he will submit an update to the Court to apprise the court of the addition of these properties to the list of real property assets governed by this order.

15.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. Defendant Tingo, or any other person acting or purporting to act on its behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership (without the express written permission of the Receiver).

16.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of Defendant Tingo, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

17.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody,

and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate.

## V.    Notice to Third Parties

18.    The Receiver shall promptly give notice, which may be by electronic means, of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of Defendant Tingo, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

19.    All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any of Defendant Tingo shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

20.    In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that she deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver.

21.    The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of Defendant Tingo (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, Defendant Tingo. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  Defendant Tingo shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box,

depository, business or service, or mail courier or delivery service, hired, rented, or used by Defendant Tingo. Defendant Tingo shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

22.      Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to Defendant Tingo shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver. Any utility company providing services to the real property comprising the Receivership Estate, including gas, electric, water, sewer, trash collection, telephone, communications, internet, television, cable or similar services, shall be prohibited from discontinuing services to the real property assets based upon unpaid bills incurred by Defendant Tingo prior to the Receiver being given an opportunity to review and pay such bills. Further, such utilities shall transfer any deposits held by the utility to the exclusive control of such Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services. Utility companies are prohibited from discontinuing service while the new accounts in the name of the Receivership Estate are in process of being established.

## VI.      <u>Injunction Against Interference with Receiver</u>

23.      Defendant Tingo and all persons receiving notice of this Order by personal service, email, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A.      Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.    Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

C.    Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or

D.    Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

24.    Defendant Tingo shall cooperate with and assist the Receiver in the performance of his duties.

25.    The Receiver shall promptly notify the Court of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VII.   **Stay of Litigation**

26.    As set forth in detail below, the following proceedings, excluding the instant proceeding, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) Defendant Tingo, including subsidiaries and partnerships; or (d) any of Defendant Tingo's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

27. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

28. All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of Defendant Tingo against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## VIII.  Managing Assets

29. For each of the Receivership Estate, where appropriate and necessary in the judgment of the Receiver, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds"). Immediately upon the Receiver's appointment, Defendant Tingo shall provide the Receiver with the federal tax identification numbers for Defendant Tingo so that Receiver may open receivership trust accounts using these tax identification numbers.

30. The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

31. Subject to Paragraph 32, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

32.    Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.

33.    For any real estate transactions in process at the time of the Receiver's appointment, including condominium sales under contract or leases of retail or multi-family units, the Receiver shall have the authority to approve, in his discretion, these transactions.

34.    The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estate, including making legally required payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

35.    The Receiver is authorized to operate the Receivership Estate under any and all existing agreements currently in place between Defendant Tingo and any third party, including any franchise or reservation agreements, and negotiate directly with such third parties as may be necessary or desirable in the Receiver's discretion to retain or modify such agreements.

36.    The Receiver is authorized to terminate or enter into vendor or other contracts pertaining to the Receivership Estate as Receiver may determine in its reasonable judgment are necessary, with no further obligation or liability under any terminated contract.

## IX.    Investigate and Prosecute Claims

37.    Subject to the requirement, in Paragraph 38, immediately below, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered, and directed to investigate, initiate, prosecute, defend, intervene in or otherwise participate in, settle, resolve, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, be advisable or proper to recover and/or conserve Receivership Property.

38.    Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of Defendant Tingo were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate. The Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.

39.    The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by Defendant Tingo.  The foregoing notwithstanding, such waiver shall not apply to Tingo's privileges with its current undersigned counsel.

40.    The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## X.    **Bankruptcy Filing**

41.    The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for Defendant Tingo. If Defendant Tingo is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estate as a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 5 above, the Receiver is vested with management authority for Defendant Tingo and may therefore file and manage a Chapter 11 petition.

42.    The provisions of Section VII above bar any person or entity, other than the Receiver, from placing Defendant Tingo in bankruptcy proceedings.

## XI.    Liability of Receiver

43.    Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

44.    The Receiver and his agents, acting within the scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

45.    This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

46.    In the event the Receiver decides to resign, the Receiver shall first give written notice to the Court of his intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XII.    Recommendations and Reports

47.    The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Recovery Plan").

48.    Within ninety (90) days of the entry of this Order, the Receiver shall file the Recovery Plan in the above-captioned action, with service copies to counsel of record.

49.    Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of the Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report)

- 13 -

the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

50.    The Quarterly Status Report shall contain the following:

A.    A summary of the operations of the Receiver;

B.    The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.    A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.    A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.    A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and (ii) collecting such judgments);

F.    A list of all known creditors with their addresses and the amounts of their claims;

G.    The status of any litigation brought by the Receivership Estate and of any Creditor Claims Proceedings, after such proceedings have been commenced; and

H.    The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

### XIII.  Fees, Expenses and Accountings

51.    Subject to Paragraphs 52 to 58 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course

of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.  The Receiver shall not be responsible for filing State or Federal tax returns on behalf of Defendant Tingo.

52.     Subject to Paragraph 53 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

53.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as agreed to by the Receiver. Such compensation shall require the prior approval of the Court with notice to all interested parties.

54.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estate (the "Quarterly Fee Applications"), with notice to all interested parties.

55.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

56.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the  amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership, with notice to all interested parties.

57.     Each Quarterly Fee Application shall:

A.    Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.    Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

58.    At the close of the Receivership, the Receiver shall submit a Final Accounting to the Court at the same time as the Receiver's final application for compensation and expense reimbursement with notice to all interested parties.

59.    This Consent Order may be signed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.

*/s/ Jamel K. Semper*_____
HONORABLE          Jamel K. Semper, U.S.D.J.
                          March 31, 2026

- 16 -

CONSENTED TO IN FORM AND CONTENT:

**NORRIS McLAUGHLIN, P.A.**
*Attorneys for Plaintiffs Hadron Master Fund,*
*Hadron Master Fund Series II, Michael Leslie*
*Cohen, and Gabriel David*

By: */s/ Thomas B. Slocum*
        Thomas B. Slocum, Esq.

Dated:  March 2, 2026

**S. MITNICK P.C.**
*Attorneys for Defendant Tingo Group, Inc.*

By: */s/ Marc D. Miceli*
        Steven Mitnick, Esq.
        Marc D. Miceli, Esq.

Dated:  March 11, 2026

**TINGO GROUP, INC.**

By: *John Scott*
        Name:  John Scott
        Title:   Chairman and CEO

Dated: March 10, 2026

- 17 -